**ADAMS CREEK ASSOCS. v. DAVIS**

[227 N.C. App. 457 (2013)]

ADAMS CREEK ASSOCIATES, a North Carolina Limited Partnership
with Billy Dean Brown, General Partner, Plaintiff
v.
MELVIN DAVIS AND LICURTIS REELS, Defendants

No. COA12-1200

Filed 4 June 2013

1. **Trespass—lappage—collateral estoppel—color of title—adverse possession**

   The trial court did not err in a trespass case by entering partial summary judgment in favor of plaintiff. The issue of lappage raised by defendants was barred by the doctrine of collateral estoppel. Further, defendants did not have a claim under color of title, nor did they show adverse possession as of right.

2. **Trespass—motion to rescind—Torrens Ac—lappage—adverse possession**

   The trial court did not err in a trespass case by denying defendants' motion to rescind. Regardless of whether plaintiff held a title to the Waterfront Property under the Torrens Act, defendants could not assert a valid claim to the Waterfront Property. Moreover, the law of lappage was of no consequence following the Torrens Proceeding that awarded title of the Waterfront Property to Shedrick by means of adverse possession.

3. **Statutes of Limitation and Repose—trespass on real property—not a bar to claim**

   The trial court did not err by failing to dismiss a trespass action based on the three-year statute of limitations under N.C.G.S. § 1-52(3). To deny plaintiff a right of action would have been to allow defendants a right of eminent domain as private persons, without the payment of just compensation, or grant defendants a permanent prescriptive easement to use plaintiff's land.

4. **Contempt—civil—noncompliance with order**

   The trial court did not err in a trespass case by holding defendants in civil contempt. Plaintiff was the rightful owner of the pertinent Waterfront Property, and defendants remained noncompliant with the 2004 summary judgment order.

5. **Pleadings—sanctions—meritless motions**

   The trial court did not abuse its discretion in a trespass case by

imposing sanctions of $11,000 pursuant to N.C.G.S. § 1A-1, Rule 11 in favor of plaintiff to cover fees incurred as a result of defendants' meritless motions.

Appeal by defendants from orders filed 16 September 2004, 9 February 2012, 29 May 2012, and 14 June 2012 by Judge Benjamin G. Alford in Carteret County Superior Court and from an order filed 31 March 2011 by Judge Jack W. Jenkins in Carteret County Superior Court. Heard in the Court of Appeals 12 February 2013.

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr.; and Ledolaw, by Michele A. Ledo, for plaintiff appellee.*

*Terry B. Richardson for defendant appellants.*

McCULLOUGH, Judge.

Defendants Melvin Davis ("Melvin") and Licurtis Reels ("Licurtis") appeal from the entry of an order granting plaintiff Adams Creek Associates ("Adams Creek") partial summary judgment and from the entry of subsequent orders holding them in contempt of the partial summary judgment order, denying them relief from the partial summary judgment order, and imposing sanctions. For the following reasons, we affirm.

## I. BACKGROUND

This case involves the disputed ownership of 13.25 acres of land along Adams Creek in Carteret County, North Carolina (the "Waterfront Property"). The Waterfront Property is included within, and was a part of, a 65-acre tract of land (the "Land") that has been occupied by the defendants' family for a century.

The relevant history of the Land and this case is summarized as follows: Elijah Reels ("Elijah") purchased the Land in November 1911. In January 1944, as a result of Elijah's nonpayment of taxes, the Land was conveyed to Carteret County. Elijah's son Mitchell Reels ("Mitchell") then purchased the Land from Carteret County in February 1944. Mitchell died intestate in 1971. In June 1976, after qualifying to administer Mitchell's estate, Mitchell's daughter Gertrude Reels ("Gertrude") filed a civil action in Carteret County Superior Court to affirm the property rights of Mitchell's heirs in the Land. In August 1976, the trial court entered a judgment ruling that Mitchell's heirs were the rightful owners of the Land (the "1976 Judgment").

In January 1978, Mitchell's brother Shedrick Reels ("Shedrick") petitioned to register title to 17.23 acres of the Land, which included the Waterfront Property, pursuant to the North Carolina Torrens Act, N.C. Gen. Stat. § 43-1 *et seq.* (the "Torrens Proceeding"). Shedrick's claim to ownership stemmed from a deed dated 20 September 1950 that was executed by Elijah and recorded in Carteret County. Mitchell's heirs were named as respondents in the Torrens Proceeding and filed an answer in March 1978. In January 1979, following a hearing, the Examiner of Titles filed his report concluding that "Shedrick . . . is the owner of the [13.25 acres that is the Waterfront Property], having established title to the same by his Deed of September 20, 1950, and having adversely possessed the same for a period in excess of twenty-seven (27) years[.]" On 16 March 1979, Attorney C.R. Wheatly, III, filed a certification on behalf of the Mitchell's heirs certifying "that they have received a copy of the Report of the Examiner of Titles . . . and that they have filed no exceptions thereto." Thereafter, on 19 March 1979, the Superior Court of Carteret County filed a decree of registration and the Register of Deeds filed a certificate of registration, declaring Shedrick the owner of the Waterfront Property and certifying that the Waterfront Property was registered in Shedrick's name.

On 25 August 1982, Shedrick filed a trespass action against Melvin and Gertrude. In the complaint, Shedrick sought to remove the cloud on his title caused by Melvin's and Gertrude's claims to an interest in the Waterfront Property, to enjoin Melvin and Gertrude from further acts of trespass, and to recover damages. The trial court's order dated 4 November 1983 was filed on 4 January 1984, granting Shedrick summary judgment. The order explicitly adjudged Shedrick to be the owner of the Waterfront Property and ordered Melvin and Gertrude not to trespass.

Thereafter, on 20 September 1985, Melvin was found to have trespassed on the Waterfront property and was held in willful contempt of the 4 January 1984 order. Melvin, however, purged himself of contempt by signing a statement acknowledging that Shedrick was the owner of the Waterfront Property and pledging not to commit further acts of trespass.

On 27 November 1985, Shedrick and his wife Beatrice Reels executed a release of the Waterfront Property from the Torrens Act and conveyed the Waterfront Property to Monroe Johnson and Charles B. Bissette, Jr., d/b/a Adams Creek Development, by general warranty deed. The release and general warranty deed were recorded 12 December 1985. Monroe Johnson and Charles B. Bissette, Jr., d/b/a Adams Creek

Development, then conveyed the Waterfront Property to Adams Creek on 8 September 1986.

The present action was initiated on 30 October 2002, by the filing of Adams Creek's complaint against Melvin and Licurtis (together "defendants") in Carteret County Superior Court. The complaint alleged acts of trespass and sought to remove the cloud on Adams Creek's title caused by Licurtis' claim to an interest in the Waterfront Property by way of a deed executed by Gertrude and others on 20 January 1992. Adams Creek also sought punitive and compensatory damages. Answers disputing title to the Waterfront Property were filed on behalf of defendants on 16 December 2002 and 31 December 2002. On 14 May 2004, Adams Creek moved for partial summary judgment. Following a hearing, the Honorable Benjamin G. Alford ("Judge Alford") entered an order on 16 September 2004, granting Adams Creek's motion for partial summary judgment (the "2004 Summary Judgment Order"). The order held that Adams Creek was the owner of the Waterfront Property and that Licurtis' deed to a portion of the Waterfront Property was a nullity. Furthermore, the order instructed defendants to "remove any structures, equipment, sheds, or trailers that they [had] placed upon the [Waterfront Property] . . . and . . . not enter upon or commit any act of trespass upon the [Waterfront Property] . . . ." The order left the issues of damages to be determined by a jury.[1]

On 10 May 2006, Adams Creek filed a motion to show cause why defendants should not be held in contempt for failing to comply with the 2004 Summary Judgment Order. Thereafter, on 17 May 2006, defendants filed a response to Adams Creek's motion to show cause, a motion to disqualify C.R. Wheatly, III, as Adams Creek's counsel, and a motion to set aside the 19 March 1979 decree of registration.

The trial court granted Adams Creek's motion to show cause on 7 July 2006 and the matter came on for hearing on 7 August 2006. During the hearing, defendants acknowledged that they had gone onto the Waterfront Property since entry of the 2004 Summary Judgment Order and further testified that they would continue to enter upon the Waterfront Property regardless of any court order. As a result, an order was filed on 10 August 2006, holding defendants in contempt and ordering defendants to be held in custody for 21 days. Moreover, the trial

---

1. Defendants filed notice of appeal from the partial summary judgment order on 14 October 2004. However, defendants' appeal was dismissed by order filed 28 March 2005 for failure to timely perfect the appeal.

court filed orders on 10 August 2006, denying defendants' motions to disqualify Adams Creek's counsel and set aside the decree of registration.

Defendants appealed all of the trial court's 10 August 2006 orders. Upon review, this Court affirmed the trial court's orders holding defendants in contempt, denying defendants' motion to disqualify Adams Creek's counsel, and denying defendants' motion to set aside the decree of registration. *Adams Creek Assocs. v. Davis*, 186 N.C. App. 512, 652 S.E.2d 677 (2007), *appeal dismissed and disc. review denied*, 362 N.C. 354, 662 S.E.2d 900 (2008) (hereafter *"Adams Creek I"*).

Notwithstanding the trial court's orders and this Court's affirmance of those orders, defendants continued to occupy the Waterfront Property. Consequently, on 28 January 2011, Adams Creek filed a motion to hold defendants in civil contempt. By order filed by the Honorable Jack W. Jenkins ("Judge Jenkins") on 31 March 2011, the trial court found defendants in civil contempt of the 2004 Summary Judgment Order and ordered defendants imprisoned until their contempt is purged.[2]

On 21 December 2011, defendants contemporaneously filed motions to set aside the 2004 Summary Judgment Order and to purge their civil contempt. Defendants then moved for summary judgment in their favor by motion filed 11 January 2012. Adams Creek responded to defendants' motions on 18 January 2012 by filing a motion for sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11 (2011). Thereafter, on 7 February 2012, Adams Creek filed a calendar request and notice of hearing for a jury trial on the issues of damages and a hearing on its motion for Rule 11 sanctions, both to take place the week of 21 May 2012.

Pursuant to an order filed 9 February 2012 by Judge Alford, defendants' motion to set aside the 2004 Summary Judgment Order was denied, defendants' motion for summary judgment was stricken, and defendants' motion to purge civil contempt was referred to Judge Jenkins for hearing, pending notice to be given by defendants. A ruling on Adams Creek's motion for Rule 11 sanctions was deferred pending a hearing. Defendants filed notice of appeal from Judge Alford's 9 February 2012 order on 6 March 2012.

On 16 May 2012, defendants filed a motion pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure to rescind the 2004 Summary Judgment Order and to rescind the 9 February 2012 order denying their motion to set aside the 2004 Summary Judgment Order. On the same

---

2. Defendants remain in contempt and in custody to this day.

day, defendants also filed a motion to dismiss the action on the basis that the statute of limitations had run against Adams Creek prior to the filing of the complaint on 30 October 2002. Defendants' motion to dismiss was based upon the statutes of limitation for actions concerning property held under color of title and trespass actions. In response to defendants' additional motions, Adams Creek filed a supplemental Rule 11 motion seeking sanctions for defendants' 16 May 2012 motions to rescind and dismiss.

On 29 May 2012, Judge Alford presided over a hearing on the pending motions. Following the hearing, orders were entered denying defendants' 16 May 2012 motions to rescind and dismiss.[3] Furthermore, on 18 May 2012 and 29 May 2012, respectively, Adams Creek dismissed its claims for punitive and compensatory damages, leaving no undecided issues in the underlying action. The trial court then granted Adams Creek's motion for Rule 11 sanctions on 14 June 2012.

On 27 June 2012, defendants filed a withdrawal of their 6 March 2012 notice of appeal on the ground that the appeal would have been interlocutory. Defendants then filed a new notice of appeal from: (1) the 2004 Summary Judgment Order; (2) the 9 February 2012 denial of their motions to set aside and for summary judgment; (3) the 29 May 2012 denial of their motions to rescind and dismiss; (4) the 31 March 2011 civil contempt order; and (5) the 14 June 2012 order imposing Rule 11 sanctions.

## II. ANALYSIS

On appeal, defendants raise various issues concerning the trial court's entry of the 2004 Summary Judgment Order and its subsequently filed orders denying defendants relief from the 2004 Summary Judgment Order, holding defendants in contempt, and imposing Rule 11 sanctions. We address the issues in turn.

## SUMMARY JUDGMENT

[1] Defendants first argue that the trial court erred by entering partial summary judgment in favor of Adams Creek on 16 September 2004. "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573,

---

3. Defendants also filed a motion for release from custody on 29 May 2012, the day of the hearing. That motion was later denied by order filed 14 June 2012.

669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). "If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

As stated above, Adams Creek's complaint filed 30 October 2002 included causes of action for trespass and to remove the cloud on its title caused by Licurtis' claim to ownership. Defendants filed answers on 16 December 2002 and 31 December 2002 in which they disputed the validity of Adams Creek's title to the Waterfront Property and counterclaimed for quiet title. On 16 September 2004, Judge Alford filed the 2004 Summary Judgment Order granting Adams Creek partial summary judgment, reserving only the issues of damages. Now on appeal, defendants specifically contend that the trial court erred by entering the 2004 Summary Judgment Order because: (1) under the law of lappage, defendants are the rightful owners of the property; (2) the seven-year statute of limitations on actions concerning property held under color of title expired prior to the filing of Adams Creek's complaint; and (3) Shedrick released the Waterfront Property from the Torrens Act.

### 1. Law of Lappage

Defendants first argue that the trial court erred by entering partial summary judgment in favor of Adams Creek and awarding title to the Waterfront Property to Adams Creek despite an issue of lappage. Defendants' argument fails.

A lappage occurs where there is an overlap in the property described in deeds of competing claimants. *Berry v. Coppersmith*, 212 N.C. 50, 54, 193 S.E. 3, 6 (1937). When an issue of lappage arises, the law of lappage sets forth rules to determine the relative rights of the competing claimants. *See Price v. Tomrich Corp.*, 275 N.C. 385, 392-93, 167 S.E.2d 766, 771 (1969) (setting forth the law of lappage rules). In this case, defendants raise the issue of lappage by asserting that the Waterfront Property claimed by Adams Creek is entirely within, and a part of, the Land claimed by defendants. Hence, defendants argue the trial court erred in entering the 2004 Summary Judgment Order without deciding the issue of lappage. We disagree.

It is abundantly clear from the long history of this case that the Waterfront Property is entirely within, and was once a part of, the Land.

This is evidenced by the fact that neither Adams Creek nor defendants raised the issue of lappage prior to this Court's statement in *Adams Creek I* that, "it is not possible from the record to discern the relative locations of the . . . tracts . . . from their descriptions." 186 N.C. App. at 515, 652 S.E.2d at 680.[4] Nevertheless, defendants now attempt to capitalize on the statement by claiming the issue of lappage precluded entry of the 2004 Summary Judgment Order.

Defendants specifically argue that, where they are in possession of the Waterfront Property and claim ownership of the Waterfront Property stemming from the 1976 Judgment awarding the Land to Mitchell's heirs, and where Adams Creek is not in possession and claims ownership stemming from the 1979 decree of registration resulting from the Torrens Proceeding, the law of lappage operates to place title in their name. Upon review of the record and arguments, we disagree and hold the issue of lappage raised by defendants is barred by the doctrine of collateral estoppel.

> Under the doctrine of collateral estoppel, or issue preclusion, a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies. A party asserting collateral estoppel is required to show that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both [the party asserting collateral estoppel and the party against whom collateral estoppel is asserted] were either parties to the earlier suit or were in privity with parties.

*State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 414, 474 S.E.2d 127, 128-29 (1996) (internal quotation marks and citations omitted).

Here, the issue of lappage was settled decades ago in the Torrens Proceeding. As previously described, in the Torrens Proceeding, Shedrick petitioned to register title to 17.23 acres of the Land. Following a hearing and a review of the Examiner of Title's report, the trial court

---

4. We note that this Court's statements concerning the boundaries of the subject property in *Adams Creek I* did not have any bearing on this Court's decision to affirm the appealed orders. In fact, in *Adams Creek I*, this Court affirmed the trial court's orders holding defendants in contempt of the 2004 Summary Judgment Order and denying defendants' motion to set aside the decree of registration resulting from the Torrens Proceeding. 186 N.C. App. 512, 652 S.E.2d 677.

entered a decree of registration awarding title to the 13.25 acres constituting the Waterfront Property to Shedrick. The nature of the trial court's award was adverse possession.

Addressing the necessary elements of collateral estoppel, first, there is no doubt that the Torrens Proceeding resulted in a final judgment on the merits as to title of the Waterfront Property.[5] Second, the very nature of adverse possession necessarily decides any issue of lappage. Third, although the parties to this action were not the named parties in the Torrens Proceeding, they are in privity. Where each element of collateral estoppel is satisfied, we hold the defendants cannot now assert the issue of lappage to re-litigate title to the Waterfront Property stemming from the 1976 Judgment.[6] Accordingly, we find the trial court did not err in entering the 2004 Summary Judgment Order on this basis.

### 2. Seven Year Color of Title

On appeal, defendants also argue that the trial court erred by entering partial summary judgment in favor of Adams Creek on the ground that Adams Creek's complaint was barred by the seven- year statute of limitations for adverse possession under color of title. We do not agree.

N.C. Gen. Stat. § 1-38 governs adverse possession under color of title.

> When a person or those under whom he claims is and has been in possession of any real property, under known and visible lines and boundaries and under color of title, for seven years, no entry shall be made or action sustained against such possessor by a person having any right or title to the same . . . .

N.C. Gen. Stat. § 1-38(a) (2011). Furthermore, this Court has defined color of title as "a writing that purports to pass title to the occupant but which does not actually do so either because the person executing the writing fails to have title or capacity to transfer the title or because of the defective mode of the conveyance used." *Cobb v. Spurlin*, 73 N.C. App. 560, 564, 327 S.E.2d 244, 247 (1985). However, in order to constitute

---

5. We note that most of defendants' arguments arise as a result of their refusal to accept the validity of the Torrens Proceeding. Yet, that decision is not properly before this Court for review and it is binding on our analysis.

6. Not only is it clear from the Torrens Proceeding that defendants have no interest in the Waterfront Property, but numerous actions have been decided since the Torrens Proceeding that have affirmed title in Shedrick, and now Adams Creek.

color of title, defendants must have accepted the deed and entered the Waterfront Property in good faith. *Farabow v. Perry*, 223 N.C. 21, 25, 25 S.E.2d 173, 176 (1943); *see also New Covenant Worship Ctr. v. Wright*, 166 N.C. App. 96, 105, 601 S.E.2d 245, 252 (2004) ("It is well settled that, if the grantee knows a deed is fraudulent, the deed cannot qualify as color of title.").

In this case, defendants assert color of title on two bases. First, defendants claim color of title stemming from the 1976 Judgment awarding title to Mitchell's heirs. Second, defendants claim color of title stemming from a fraudulent deed executed by Mitchell's heirs in favor of Licurtis on 20 January 1992. Each of defendants' claims fail as they cannot show good faith. As discussed above, following the 1976 Judgment in favor of Mitchell's heirs, Mitchell's heirs, including defendants, lost all interest in the Waterfront Property in the Torrens Proceeding that awarded title to Shedrick. Furthermore, defendants cannot claim good faith in relying on the fraudulent deed executed by Mitchell's heirs almost 13 years after Mitchell's heirs, including defendants, lost all interest in the Waterfront Property. Consequently, defendants cannot claim color of title.

In addition to defendants' claim under color of title, we note that defendants cannot show adverse possession as of right. Adverse possession as of right requires uninterrupted possession of property with known and visible boundaries that is adverse to all other persons for a period of twenty years. *See* N.C. Gen. Stat. § 1-40 (2011). In this case, Shedrick instituted a trespass action against Melvin and Gertrude on 25 August 1982. Thereafter, an order granting Shedrick summary judgment was filed on 4 January 1984. Approximately 18 years after Shedrick's successful trespass suit, Adams Creek instituted the present action by filing a complaint on 30 October 2002. Thus, defendants have not occupied the Waterfront Property uninterrupted for the statutory period.

### 3. Release from the Torrens Act

Defendants also argue that the trial court erred by finding that Shedrick's release of the Waterfront Property pursuant to N.C. Gen. Stat. § 43-25 was "for purposes of conveyance only[]" and basing its grant of partial summary judgment on the fact that Adams Creek's title to the Waterfront Property was protected under the Torrens Act. In making their arguments, defendants contend that Shedrick's release pursuant to N.C. Gen. Stat. § 43-25 released the Waterfront Property from the Torrens Act for all purposes, as if the property was never registered.

In order to better understand the implications of the release executed by Shedrick, we note

[t]he general purpose of the Torrens system is to secure by a decree of court, or other similar proceedings, a title impregnable against attack; to make a permanent and complete record of the exact status of the title with the certificate of registration showing at a glance all liens, encumbrances, and claims against the title; and to protect the registered owner against all claims or demands not noted on the book for the registration of titles.

*State v. Johnson*, 278 N.C. 126, 144, 179 S.E.2d 371, 383 (1971) (internal quotation marks and citation omitted); *see also* N.C. Gen. Stat. § 43-1 *et seq.* (2011). Thus, if Adams Creek's title is not protected under the Torrens Act, its title is subject to claims of adverse possession. With that in mind, Adams Creek and defendants now dispute whether Adams Creek's title to the Waterfront Property remains protected under the Torrens Act.

Upon review of the 2004 Summary Judgment Order and relevant provisions of the Torrens Act, we first note that the 2004 Summary Judgment Order granting Adams Creek partial summary judgment did not determine that Adams Creek holds title to the Waterfront Property under the Torrens Act. The order simply provides:

1. [Adams Creek's] title in this matter originates as a result of [the Torrens Proceedings] . . . .

. . . .

6. The said certificate was released under the provisions of [the Torrens Act] for the purposes of conveyance only; . . .

These findings are supported by the evidence in the case and are in no way determinative of the title now held by Adams Creek. Second, based on the language of N.C. Gen. Stat. § 43-25 and the fact that N.C. Gen. Stat. § 43-31 (2011) provides a method for the transfer of title under the Torrens Act, we favor defendants position that Adams Creek's title is no longer afforded the protections of the Torrens Act following Shedrick's release pursuant to N.C. Gen. Stat. § 43-25. Nevertheless, we need not decide the effects of Shedrick's release in the instant case. As discussed above and below, Mitchell's heirs lost all interest in the Waterfront Property as a result of the Torrens Proceeding and defendants fail to meet the requirements to regain title by adverse possession. Therefore, whether or not Adams Creek is afforded the protections of the Torrens Act, the entry of the 2004 Summary Judgment Order was proper.

## MOTION TO RESCIND

**[2]** On 16 May 2012, defendants filed a motion to rescind the trial court's 2004 Summary Judgment Order and 7 February 2012 order denying defendants' motion to set aside the 2004 Summary Judgment Order on the grounds that Adams Creek's title is not protected under the Torrens Act and Mitchell's heirs are the rightful owners pursuant to the law of lappage. The trial court denied defendants' motion to rescind by order filed 29 May 2012. Defendants now assert that the trial court's denial of their motion to rescind without a hearing was error.

For the reasons discussed above, we hold the trial court did not err in denying defendants' motion to rescind. Whether or not Adams Creek holds a title to the Waterfront Property under the Torrens Act, defendants cannot assert a valid claim to the Waterfront Property. Moreover, the law of lappage is of no consequence in this case following the Torrens Proceeding that awarded title to the Waterfront Property to Shedrick by means of adverse possession.

## MOTION TO DISMISS

**[3]** Subsequent to the trial court's entry of the 2004 Summary Judgment Order, defendants filed a motion on 16 May 2012 to dismiss this action on the ground that the statute of limitations had run. The trial court denied defendants' motion by order filed 29 May 2012. Defendants now argue that the trial court erred by failing to dismiss the action based on the three- year statute of limitations for trespass upon real property.[7] *See* N.C. Gen. Stat. § 1-52(3) (2011). "[A] motion to dismiss under N.C.R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979). Thus, "this Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003). Upon review, we hold the trial court did nor err.

N.C. Gen. Stat. § 1-52(3) provides a three-year statute of limitations for actions alleging trespass upon real property. The statute further provides, "[w]hen the trespass is a continuing one, the action shall be

---

7. The majority of defendants' 16 May 2012 motion to dismiss argues that the action should be dismissed pursuant to N.C. Gen. Stat. § 1-38 because defendants occupied the Waterfront Property for over seven years under color of title. Defendants only mentioned the three-year statute of limitations for trespass as a bar to this action in the alternative and provided no argument. Nevertheless, we review the issue on appeal.

commenced within three years from the original trespass, and not there-after." N.C. Gen. Stat. § 1-52(3). Defendants now argue that, because they have occupied the Waterfront Property at all times since Adams Creek acquired title to the Waterfront Property by deed dated 8 September 1986, the three-year statute of limitations for trespass expired well before Adams Creek filed this action on 30 October 2002, 16 years later. Defendants' argument lacks merit.

In construing N.C. Gen. Stat. § 1-52(3), our Supreme Court has stated that

> the statute declares that actions for trespass on real estate shall be barred in three years, and when the trespass is a continuing one such action shall be commenced within three years from the original trespass and not thereafter; but this term, "continuing trespass," was no doubt used in reference to wrongful trespass upon real property, caused by structures permanent in their nature and made by companies in the exercise of some *quasi*-public franchise. Apart from this, the term could only refer to cases where a wrongful act, being entire and complete, causes continuing damage, and was never intended to apply when every successive act amounted to a distinct and separate renewal of the wrong.

*Sample v. Lumber Co.*, 150 N.C. 161, 165–66, 63 S.E. 731, 732 (1909). In light of the Supreme Court's analysis, in *Bishop v. Reinhold*, 66 N.C. App. 379, 311 S.E.2d 298 (1984), this Court held that the defendants' maintenance of a portion of a house on the plaintiffs' land was a "separate and independent trespass each day it so remains and the three-year statute for removal begins to run each day the encroaching structure remains . . . ." *Id.* at 384, 311 S.E.2d at 301. "Any action to remove the encroachment . . . would not be barred until defendants had been in continuous use thereof for a period of twenty years so as to acquire the right by prescription." *Id.* This Court reasoned that "[t]o deny [the] plaintiffs a right of action . . . would be to allow the defendants a right of eminent domain as private persons (and without the payment of just compensation) or grant defendants a permanent prescriptive easement to use the plaintiffs' land. This the law will not do, as the defendants have not been in possession for 20 years . . . ." *Id.* at 384, 311 S.E.2d at 301-02.

In the present case, defendants alleged title to the Waterfront Property and alleged that defendants had erected and continue to maintain structures on the Waterfront Property. Applying the reasoning in

*Bishop* to the instant case, we hold that Adams Creek's trespass action was not barred by the three- year statute of limitations and that the pleadings were sufficient to state a claim. Therefore, the trial court did not err in denying defendants' motion to dismiss.[8]

## CONTEMPT

[4] Following entry of the 2004 Summary Judgment Order and the 10 August 2006 order holding defendants in contempt, defendants admittedly continued to occupy and maintain structures on the Waterfront Property. Consequently, Adams Creek filed a motion to hold defend-ants in civil contempt on 28 January 2011. Following a hearing on 17 March 2011, Judge Jenkins filed an order on 31 March 2011 holding defendants in civil contempt and ordering defendants to be held in custody until their contempt is purged. Defendants now argue that the entry of the 31 March 2011 contempt order was error because it relied on the erroneous conclusion that Adams Creek is the rightful owner of the Waterfront Property.[9]

> The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment.

*Watson v. Watson,* 187 N.C. App. 55, 64, 652 S.E.2d 310, 317 (2007) (internal quotation marks and citations omitted), *disc. review denied,* 362 N.C. 373, 662 S.E.2d 551 (2008).

On appeal, defendants do not assign error to any particular finding of fact. Consequently, the trial court's findings of fact are binding on appeal. *See Tucker v. Tucker,* 197 N.C. App. 592, 594, 679 S.E.2d 141,

---

8. To the extent defendants argue the trial court erred by denying their motion to dismiss based on the statutes of limitation for adverse possession in N.C. Gen. Stat. §§ 1-38 & -40, we hold the trial court did not err for the reasons discussed above in our affirmance of the 2004 Summary Judgment Order.

9. Defendants continue to disregard the result of the Torrens Proceeding and assert that they own the Land awarded to Mitchell's heirs as a result of the 1976 Judgment. Based on their assertion, defendants argue they cannot be in contempt if they occupy their own land. Based on our acknowledgment of the Torrens Proceeding, we find defendants' assertion meritless.

143 (2009) (Providing that in a contempt proceeding, " '[f]indings of fact to which no error is assigned are presumed to be supported by competent evidence and are binding on appeal.' ") (quoting *Pascoe v. Pascoe,* 183 N.C. App. 648, 650, 45 S.E.2d 156, 157 (2007)). Instead of challenging particular findings of fact, defendants rely on this Court's opinion in *Carson v. Reid,* 76 N.C. App. 321, 323, 332 S.E.2d 497, 499 (1985) ("[A] land surveyor[] . . . cannot give his opinion as to where a true boundary is."), *aff'd per curiam,* 316 N.C. 189, 340 S.E.2d 109 (1986), to argue that the trial court improperly considered testimony from a land surveyor regarding the existence of structures within the boundaries of the Waterfront Property. In the present case, however, we need not decide the propriety of the land surveyor's testimony because the testimony of defendants and other witnesses support the trial court's findings and conclusion that defendants "have for six and a half years willfully violated the 2004 [Summary Judgment] Order."[10]

Additionally,

> [c]ivil contempt is designed to coerce compliance with a court order, and a party's ability to satisfy that order is essential. Because civil contempt is based on a willful violation of a lawful court order, a person does not act willfully if compliance is out of his or her power. Willfulness constitutes: (1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so. Ability to comply has been interpreted as not only the present means to comply, but also the ability to take reasonable measures to comply. A general finding of present ability to comply is sufficient when there is evidence in the record regarding defendant's assets.

*Watson,* 187 N.C. App. at 66, 652 S.E.2d at 318 (internal quotation marks and citations omitted). In this case, we find no error on this basis. Based on the evidence presented, the trial court properly found that defendants were able to comply with the 2004 Summary Judgment Order. Hence, defendants' noncompliance was willful.

Nevertheless, defendants argue that they cannot comply with the 2004 Summary Judgment Order because doing so would require them to surrender ownership of the Land. As we have recognized throughout

---

10. It is further noted that defendants admit in their brief that "their structures and equipment remain on the 13.25 acres that is the subject of this action[.]"

this opinion, the Waterfront Property at issue in this case, which was originally included within, and a part of, the Land claimed by defendants, was awarded to Shedrick in the Torrens Proceeding. Thus, defendants' argument that their noncompliance with the 2004 Summary Judgment Order is not willful because it requires them to surrender title to the Waterfront Property fails.

Having determined that the trial court did not err in entering the 2004 Summary Judgment Order determining Adams Creek to be the rightful owner of the Waterfront Property, and having determined defendants remain in noncompliance with the 2004 Summary Judgment Order, we now uphold the 31 March 2011 order holding defendants in civil contempt.

## SANCTIONS

**[5]** The last issue raised by defendants on appeal is whether the trial court erred by imposing sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11 (2011). Under Rule 11, a court may impose sanctions on a party that files a motion that is factually insufficient, legally insufficient, or filed for an improper purpose. N.C. Gen. Stat. § 1A-1, Rule 11; *see also Bryson v. Sullivan*, 330 N.C. 644, 655, 412 S.E.2d 327, 332 (1992). "A violation of any part of the rule mandates sanctions." *Peters v. Pennington*, 210 N.C. App. 1, 27, 707 S.E.2d 724, 742 (2011) (citing *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365 (1994)).

When a North Carolina appellate court reviews a trial court's grant or denial of Rule 11 sanctions,

> [t]he trial court's decision to impose or not to impose mandatory sanctions under [N.C. Gen. Stat.] § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue. In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under [N.C. Gen. Stat.] § 1A-1, Rule 11(a).

*Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). "[I]n reviewing the appropriateness of the particular sanction imposed, an 'abuse of discretion' standard is proper . . . ." *Id.*

In this case, the Rule 11 sanctions imposed on defendants resulted from Adams Creek's motions for sanctions on 18 January 2012 and 22 May 2012 concerning defendants' filing of the following motions: (1) motion to set aside the order of summary judgment filed 21 December 2011; (2) motion to purge defendants' civil contempt filed 21 December 2011; (3) motion for summary judgment filed 11 January 2012; (4) motion to dismiss filed 16 May 2012; and (5) motion to rescind the order of partial summary judgment filed 16 May 2012. Following a hearing on 29 May 2012, the trial court granted plaintiff's motions for Rule 11 sanctions against defendants and awarded Adams Creek $11,000 to cover fees incurred in responding to the motions. In imposing Rule 11 sanctions, the trial court concluded:

> 12. Defendants' Motion to Purge Civil Contempt, Motion for Summary Judgment, Motion to Set Aside Order of Summary Judgment, Motion to Dismiss (Statute of Limitations), and Motion to Rescind Order of Partial Summary Judgment were factually and legally irreconcilable with the law of the case established by the 2004 Summary Judgment Order and subsequent thereto.
>
> 13. Defendants' motions sought relief which as a matter of law the defendants were not entitled to pursue or receive.
>
> 14. Applying an objective standard as required under Rule 11, defendants' conduct in filing defendants' motions was an intentional effort to harass plaintiff, increase the cost of litigation for plaintiff, and delay and deny plaintiff's use and enjoyment of its land.
>
> 15. Defendants' motions derive from an improper purpose in violation of Rule 11 NCRCP.

Following the analysis set forth in *Turner*, we first review the trial court's order to determine "whether the trial court's conclusions of law support its judgment or determination[.]" 325 N.C. at 165, 381 S.E.2d at 714. As stated above, the trial court concluded that defendants' motions "were factually and legally irreconcilable with the law of the case[,]" "sought relief which as a matter of law the defendants were not entitled to pursue or receive[,]" and "derive from an improper purpose[,]" "to harass plaintiff, increase the cost of litigation for plaintiff, and delay and deny plaintiff's use and enjoyment of its land." These conclusions clearly support the trial court's imposition of sanctions.

In accordance with *Turner*, we next determine "whether the trial court's conclusions of law are supported by its findings of fact[.]" *Id.* Regarding the trial court's conclusions, defendants argue that there was a factual and legal basis for the filing of each of their motions and that none of their motions were filed for an improper purpose. We disagree.

"In analyzing whether the [filing] meets the factual certification requirement, the court must make the following determinations: (1) whether the [party] undertook a reasonable inquiry into the facts and (2) whether the [party], after reviewing the results of his inquiry, reasonably believed that his position was well-grounded in fact." *In re Will of Durham*, 206 N.C. App. 67, 71, 698 S.E.2d 112, 118 (2010) (internal quotation marks and citation omitted). "To satisfy the legal sufficiency requirement, the disputed action must be warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Dodd*, 114 N.C. App. at 635, 442 S.E.2d at 365. This also requires a two-step analysis.

> Initially, the court must determine the facial plausibility of the [motion]. If the [motion] is facially plausible, then the inquiry is complete, and sanctions are not proper. If the [motion] is not facially plausible, the second issue is whether, based on a reasonable inquiry into the law, the alleged offender formed a reasonable belief that the [motion] was warranted by existing law, judged as of the time the [motion] was signed.

*Ward v. Jett Properties, LLC*, 191 N.C. App. 605, 607-08, 663 S.E.2d 862, 864 (2008) (internal quotation marks and citation omitted).

Upon review of the motions, record, and order, we find the trial court's conclusions supported by its finding of facts and affirm the conclusions that defendants' motions were factually and legally insufficient. In arguing their motions were proper, defendants raise the issue of lappage as the basis for their filing the motions seeking relief from the 2004 Summary Judgment Order. Defendant specifically alleges the boundaries of the Waterfront Property and the Land had not been determined. By raising the issue of lappage to contest boundaries of the Waterfront Property and the Land, defendant sought to re-litigate the issue of title to the Waterfront Property dating back to the Torrens Proceeding. However, as previously discussed, any issue of title to the Waterfront Property stemming from the 1976 Judgment awarding the Land to Mitchell's heirs is barred by the doctrine of collateral estoppel after title was firmly decided decades ago in the Torrens Proceeding. The trial court recognized this when it found:

11. Instead of seeking through appropriate means appellate review of orders about which they disagree, defendants have continued to ignore and violate the orders and have through various means, including the defendants' motions at issue herein, attempted to re-litigate title to the property that, as a matter of law, was determined by the 2004 Summary Judgment Order and in prior proceedings.

As a result, we cannot hold that defendants' motions were sufficiently grounded in fact or law.[11]

In the final step of the *Turner* analysis, we must determine "whether the findings of fact are supported by a sufficiency of the evidence." 325 N.C. at 165, 381 S.E.2d at 714. "Since [defendants] [have] not challenged any of the trial court's findings of fact, they are binding on us for purposes of appeal." *In re Will of Durham*, 206 N.C. App. at 82, 698 S.E.2d at 124.[12] Consequently, we find the imposition of Rule 11 sanctions on defendants warranted.

Lastly, concerning the appropriateness of the Rule 11 sanctions awarded, we find no abuse of the trial court's discretion in awarding $11,000 to Adams Creek to cover fees incurred as a result of defendants' meritless motions. See N.C. Gen. Stat. § 1A-1, Rule 11 (A reasonable sanction may include an order to pay reasonable attorney's fees.). Consequently, we affirm the trial court's 14 June 2012 order imposing Rule 11 sanctions on defendants.

### III. CONCLUSION

For the reasons discussed above, we affirm the orders of the trial court.

Affirmed.

Judges HUNTER (Robert C.) and DAVIS concur.

---

11. Having found defendants' motions factually and legally insufficient, we need not address whether defendants filed the motions for an improper purpose.

12. Defendants do not specifically assign error to findings of fact 8 and 11; however, defendants do argue that the trial court erred in relying on the fact that they did not seek appellate review of the 2004 Summary Judgment Order. While we acknowledge that defendants' motions were not untimely, given that the 2004 Summary Judgment Order was interlocutory until Adams Creek dismissed its claims for punitive and compensatory damages on 18 May 2012 and 29 May 2012, we do not find the findings to be unsupported by the evidence. Furthermore, the conclusions of law are adequately supported by the remaining findings of fact.