ELMORE, Judge.
*392 Brothers, Melvis Davis and Licurtis Reels (defendants), appeal from an order denying their motions for release from conditional incarceration for civil contempt. Defendants have been previously before this Court twice, unsuccessfully disputing an adjudication that Adams Creek Associates (plaintiff), not defendants, are the rightful owners of 13.25 acres of property along Adams Creek in Carteret County, and have unsuccessfully challenged two orders entered in 2006 and 2011 finding them in contempt of court. See Adams Creek Assocs. v. Davis , 186 N.C. App. 512, 652 S.E.2d 677 (2007), writ denied, disc. rev. denied, temp. stay dissolved, appeal dismissed , 362 N.C. 354, 662 S.E.2d 900 (2008) (" Adams Creek I "); Adams Creek Assocs. v. Davis , 227 N.C. App. 457, 459, 746 S.E.2d 1, 3, disc. rev. denied , 367 N.C. 234, 748 S.E.2d 322 (2013) (" Adams Creek II "). Defendants have been imprisoned for civil contempt since March 2011, after entry of the second contempt order, for failing to comply with court orders requiring them to remove their structures and equipment from Adams Creek Associates' property, and to cease trespassing upon it. In its 2011 contempt order, the superior court afforded defendants the opportunity to purge their contempt by (1) removing their structures and equipment from the property, and (2) attesting in writing to never again trespass. In this appeal, defendants challenge a 2016 order denying their motions for custodial release.
In 2016, defendants moved for custodial release on the grounds that they were financially unable to comply with the contempt order and that their continued incarceration has become punitive and violates due process. But at the hearing on their motions, defendants testified that even if they were financially able to comply with the property-removal purge condition, they would not do so, and defendants again refused to comply with the attestation purge condition. Defendants' counsel also argued that because defendants were unable to comply with the order, their continued imprisonment has become a punitive contempt sanction. The trial court denied the motions. In its order, the trial court acknowledged that defendants presented evidence regarding their financial situation and the costs associated with removing the structures and equipment from the property, but refused to make findings on the matter in light of defendants' refusals to comply with either purge condition. The trial court also concluded that continued incarceration has not become punitive because *9 defendants wield the power to purge their contempt but have recalcitrantly refused. *393 On appeal, defendants contend the trial court erred by (1) failing to consider their alleged inability to comply with the contempt order, (2) failing to consider whether the purpose of the underlying order could still be served by defendants' continued incarceration, and (3) improperly concluding that their continued incarceration has not become a punitive criminal contempt. Because defendants were already ordered to be indefinitely committed until they purged their civil contempt when they filed their motions for release, the only issue properly before the trial court was whether defendants were subject to custodial release. Because defendants willfully refused to perform the attestation and admitted they would not perform the property-removal purge condition, even if they could, defendants failed to prove they purged their contempt or satisfy their burden of producing evidence to support their alleged inability-to-comply defense. We hold the trial court did not err in refusing to make futile findings on their alleged inability to comply with the prior order due to defendants' outright refusals to purge their contempt. Additionally, because the character of relief ordered by the contempt order was incarceration until compliance, and defendants were afforded the opportunity to avoid imprisonment by performing affirmative acts, we hold that the trial court properly concluded their continued incarceration has not become punitive. Accordingly, we affirm.
I. Background
The litigation relevant to this appeal started in 1982, when Shedrick Reels filed a trespass action against defendant Melvin Davis and Gertrude Reels, the mother of defendant Licurtis Reels. See Adams Creek I , 186 N.C. App. at 516, 652 S.E.2d at 680. In 1984, the trial court entered a summary judgment order adjudicating Shedrick to be the owner of the property and ordering Davis and Reels' mother not to trespass. See Adams Creek II , 227 N.C. App. at 459, 746 S.E.2d at 3. In 1985, Davis was held in contempt and incarcerated for his refusal to comply with that order, but he was released upon satisfying the purge condition of executing a document acknowledging the property belonged to Shedrick and agreeing not to trespass. Id. In 1985, Shedrick sold the property to Adams Creek Development, which then conveyed the property to plaintiff, Adams Creek Associates, in 1986. Id. at 459-60, 746 S.E.2d at 3.
In 2002, plaintiff filed an action against defendants Davis and Reels, alleging they continued to claim an interest in the property and to trespass upon it. Id. at 460, 746 S.E.2d at 3-4. In 2004, the trial court entered a partial summary judgment order in plaintiff's favor, enjoining defendants from further trespassing and ordering them to remove their *394 structures and equipment from the property ("2004 Summary Judgment Order"). Id. After defendants refused to comply, plaintiff moved to hold them in contempt. Id. After a show cause hearing, *10 the trial court entered an order on 10 August 2006 finding defendants in civil contempt for failing to comply with the 2004 Summary Judgment Order, and in criminal contempt for testifying under oath that they did not intend to obey future orders to stay off the property ("2006 Contempt Order"). Adams Creek I , 186 N.C. App. at 520, 652 S.E.2d at 683.
In 2006, defendants appealed the 2006 Contempt Order. Id. Defendants argued they were improperly found to be in both civil and criminal contempt for the same behavior. Id. at 526-27, 652 S.E.2d at 686-87. We disagreed and held that the trial court properly found defendants to be in both civil and criminal contempt for different acts. Id. at 527, 652 S.E.2d at 687 ("[D]efendants were found in civil contempt for failing to comply with the court's 2004 order, and were found in criminal contempt for their testimony threatening to disobey future orders of the court."). Defendants also attempted to challenge the 2004 Summary Judgment Order, but because their appeal from that order was not properly before us, we refused to address their challenges. Id. at 523, 652 S.E.2d at 684.
In January 2011, plaintiff filed another motion to hold defendants in contempt for continuing to occupy the property and refusing to comply with court orders directing them not to trespass. Adams Creek II , 227 N.C. App. at 461, 746 S.E.2d at 4. After a hearing, the trial court entered an order on 31 March 2011 finding defendants in civil contempt for failing to comply with prior court orders, and ordering that defendants be incarcerated until they purged their contempt, see id. , by (1) presenting evidence they removed their structures and equipment from the property, and (2) attesting in writing to never again trespass ("2011 Contempt Order"). Defendants have remained incarcerated since March 2011.
In 2012, defendants appealed, among other orders, the 2011 Contempt Order and the 2004 Summary Judgment Order. See Adams Creek II , 227 N.C. App. at 462, 746 S.E.2d at 5. On appeal, defendants raised several challenges to the 2004 Summary Judgment Order that awarded plaintiff title to the property, and we affirmed that order. Id. at 462-67, 746 S.E.2d at 5-8. Defendants also challenged the 2011 Contempt Order on the basis that "it relied on the erroneous conclusion that Adams Creek is the rightful owner of the Waterfront Property." Id. at 470, 746 S.E.2d at 10 (footnote omitted). We ascertained that the actual issue presented was whether defendants were improperly found in civil contempt in 2011 for failing to comply with the 2004 Summary Judgment Order, *395 id. at 470, 746 S.E.2d at 10, and concluded that "[b]ased on the evidence presented, the trial court properly found that defendants were able to comply with the 2004 Summary Judgment Order" and "[h]ence, defendants' noncompliance was willful." Id. at 471, 746 S.E.2d at 11. Accordingly, having affirmed the 2004 Summary Judgment Order and having determined that defendants remained in noncompliance with that order, we affirmed the 2011 Contempt Order. Id.
On 1 June 2015, after having been incarcerated for four and a half years, defendants petitioned our Supreme Court for a writ of habeas corpus for their custodial release, which was denied three days later on 4 June 2015. See Davis v. Buck , --- N.C. ----, 772 S.E.2d 707 (2015).
On 4 May 2016, defendants filed the instant motions in the cause, seeking custodial release based upon their alleged inability to comply with the 2011 Contempt Order, and on the basis that their continued incarceration has become punitive and violates their due process rights. After a hearing at which defendants again refused to perform the attestation purge condition and admitted they would refuse to comply with the property-removal purge condition even if they were able, the trial court entered an order on 13 June 2016 denying their motions. Defendants now appeal from this 2016 order and have been in prison since entry of the 2011 Contempt Order.
II. Analysis
On appeal, defendants contend the trial court erred in denying their motions for custodial release by (1) failing to consider their alleged inability to comply with the 2011 Contempt Order, (2) failing to consider whether the purpose of the 2004 Summary Judgment Order could still be served by compliance, and (3) improperly concluding that their continued incarceration has not become punitive.
A. Review Standard
"The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." Gandhi v. Gandhi , --- N.C. App. ----, ----, 779 S.E.2d 185, 188 (2015) (citation and quotation marks omitted). "Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment." Id. (citations and quotation marks omitted). Legal conclusions are reviewed de novo . Tucker v. Tucker , 197 N.C. App. 592, 594, 679 S.E.2d 141, 143 (2009) (citation omitted).
*396 B. Alleged Statutory Errors
Defendants first contend the trial court erred by denying their motions for release on the ground that it failed adequately to consider their alleged inability to comply with the 2011 Contempt Order and, additionally, by failing to consider whether the purpose of the underlying order may still be *11 served by compliance. Defendants' arguments miss the mark.
N.C. Gen. Stat. § 5A-21(a) (2015) provides in pertinent part:
(a) Failure to comply with an order of a court is a continuing civil contempt as long as:
(1) The order remains in force;
(2) The purpose of the order may still be served by compliance with the order;
(2a) The noncompliance by the person to whom the order is directed is willful; and
(3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.
(Emphasis added.) "A person who is found in civil contempt may be imprisoned as long as the civil contempt continues, subject to ... limitations" inapplicable here. N.C. Gen. Stat. § 5A-21(b) (2015) (emphasis added).
"The purpose of civil contempt is not to punish but to coerce the defendant to comply with a court order." Spears v. Spears , 245 N.C. App. 260, 274, 784 S.E.2d 485, 494-95 (2016) (citation and quotation marks omitted). Thus, generally, before a trial court may impose punishment for civil contempt, it must determine that a defendant "ha[s] the present ability to comply, or the present ability to take reasonable measure that would enable him [or her] to comply, with the order." Id. at 274, 784 S.E.2d at 494 (citation and quotation marks omitted). However, "if a person is found in civil contempt for failure ... to comply with a court order to perform an act that does not require the payment of a monetary judgment, the person may be imprisoned as long as the civil contempt continues without further hearing ." N.C. Gen. Stat. § 5A-21(b) (emphasis added).
In the 2011 Contempt Order, defendants were ordered to be confined indefinitely until they purged their contempt by (1) "presenting *397 evidence ... that [certain structures they own have] been removed completely from the property," and (2) "confirm[ing] in writing [their] agreement to never again go onto the property." Because these acts do not require defendants to pay a monetary judgment, they may be subject to remain in prison "without further hearing." N.C. Gen. Stat. § 5A-21(b). Since defendants were already serving an indefinite, conditional prison sentence for civil contempt at the time their motions for release were filed, the trial court was not adjudicating an initial or continuing contempt, and thus had no inherent statutory obligation to consider any of N.C. Gen. Stat. § 5A-21(a) 's enumerations; rather, the issue for the trial court, which is the subject of our review, is whether defendants satisfied their burden of showing they were subject to release.
N.C. Gen. Stat. § 5A-22(a) (2015) provides that "[a] person imprisoned for civil contempt must be released when his civil contempt no longer continues." Upon an incarcerated contemnor's motion, "the court must determine if he is subject to release and, on an affirmative determination, order his release." N.C. Gen. Stat. § 5A-22(b) (2015). Absent a showing that a contemnor purged their contempt, he or she may move for release based upon "a present inability to comply with the order...." United States v. Rylander , 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) (citations omitted); Turner v. Rogers , 564 U.S. 431, 442, 131 S.Ct. 2507, 2516, 180 L.Ed.2d 452 (2011) ("A court may not impose punishment in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." (citation and internal quotation marks omitted)). But "[i]t is settled, ... that in raising this defense, the [contemnor] has a burden of production." Rylander , 460 U.S. at 757, 103 S.Ct. at 1552 (citations omitted). It follows that a contemnor cannot satisfy this burden by testifying that, even if they could comply with the order, they would not. Such a showing would vitiate the inability-to-comply defense.
Here, defendants alleged in their motions that they were financially unable to comply with the 2011 Contempt Order. However, at the hearing, defendants readily admitted that they would not perform the property-removal purge condition, even if they could. This relevant exchange occurred between defendant Davis and opposing counsel:
*12 Q. Regardless of how many orders exist or what judges tell you to do, you will never get off that land or move what you have on the land, will you?
A. No, sir.
*398 Q. It's not that you can't do it, it's that you won't do it, right?
....
A. I-we have been on that land all our days and that is where-that is where I am at.
....
Q. So you simply refuse to do it? Whether you can do it or not it doesn't matter to you, you just won't do it?
A. They come there, they blew up the boat, sunk my boat, come and set my house on fire.
THE COURT: Sir, you need to answer his question, not just start talking about things you want to talk about. The question is, it's not a matter of whether you can't but whether you will. That is his question.
A. I will not.
....
Q. You will not do it?
A. No.
(Emphasis added.) This relevant exchange occurred between defendant Reels and opposing counsel:
Q. So whether or not you have equipment, whether or not you have somebody that can use it, whether or not your mother will let you move it on her land, all of that doesn't matter because you simply are not going to move it ever, are you?
A. No, sir , I don't-I don't have the financial to move it because it's mine.
Q. What if you had the money? What if you had social security disability, would you use that money to move it?
....
A. No, sir.
....
Q. Why not?
*399 A. Because it's mine.
Q. So this idea that you don't have money to move it, if you had money you still wouldn't use it to move it, would you?
A. No, sir.
(Emphasis added.)
In its order denying defendants' motions, the trial court made the following unchallenged, and thus binding, factual findings:
16. Defendants' counsel called both defendants to the stand to testify about their lack of income since they have been in jail, the heavy equipment and its condition, and their health but asked no questions about the defendants' willingness to "never again go upon the property."
17. On cross examination, both defendants confirmed they had testified under oath at least five times in the past decades of litigation (in court and in deposition).
18. Both defendants confirmed that in their prior testimony they said on every occasion that it was not they couldn't comply with the Contempt Order, it was they wouldn't comply.
19. Both defendants again confirmed that they would not stay off the property and interjected their continued commitment to their ownership of the property despite the decades of legal rulings to the contrary.
20. Both defendants testified that they did not care how many judges told them to stay off the property, they would not do so.
21. Both defendants testified that if they had the money to remove structures as required by the Contempt Order, they would not do so.
22. Other evidence was presented on other factual issues concerning the defendants' financial condition, the heavy equipment still owned by Melvin Davis and its condition, the expense of moving the structures off of the property, the defendants' health, and other issues.
23. The Court makes no finding as to these matters because defendants' failure to sign the necessary written *400 document pledging to not again go upon the property, and their avowed insistence to the contrary they would indeed go back on the property, is dispositive on the controlling issue as *13 to whether defendants have purged or are even willing to purge their contempt.
As reflected by the trial transcript and these findings, the trial court considered defendant's alleged inability defense but determined that making correlative findings would be futile in light of their outright refusals to purge their contempt. Since the purge condition acts did not require defendants to pay a monetary judgment, defendants may be imprisoned "without further hearing." And because the hearing was not an initial or continuing adjudication of contempt, the trial court had no obligation under N.C. Gen. Stat. § 5A-21(a) to make findings regarding defendants' ability to comply with the contempt order. Expenses inherent in removing structures and equipment is certainly relevant in determining whether defendants here can comply with the property-removal purge condition. But based on their refusals to perform the attestation purge act, and their admissions that they would refuse to perform the property-removal purge act even if they were able, defendants effectively vitiated their inability defense. Under these circumstances, we hold the trial court did not err in refusing to make findings on defendants' alleged inability to comply with the contempt order.
Defendants also make a bare assertion that the trial court erred by failing to find that "the purpose of the order, or prior orders ..., are served by the Defendants' continued incarceration." As concluded above, the hearing before the trial court was not an initial or continuing contempt adjudication, and therefore the trial court was under no statutory obligation to reconsider N.C. Gen. Stat. § 5A-21(a)(2) ("The purpose of the order may still be served by compliance with the order[.]"). Further, defendants argument misses the point. The relevant consideration is not whether the purpose of an order can be served by continuing to punish a contemnor, but whether its purpose can still be served by compliance. The record reveals that defendants have not removed their structures from plaintiff's property and thus the purpose of the 2004 Summary Judgment Order could still be served by compliance. See, e.g. , Plasman v. Decca Furniture (USA), Inc. , --- N.C. App. ----, ----, 800 S.E.2d 761, 773 (2017) ("Our review of the record reveals that the [contemnors] have yet to return the diverted funds. We need say little more than that the purpose of the [underlying order]-to enforce compliance with the injunction's terms, including the requirement that funds *401 diverted from Bolier's bank accounts be returned to Decca USA-could still be served by compliance with the [underlying order]").
C. Nature of Contempt
Defendants next contend the court erred by denying their motions for release on the ground that it erroneously concluded that their continued incarceration is not punitive. We disagree.
As an initial matter, we reject defendant's argument that the "2004 [Summary Judgment] Order, and subsequently, [the] 2011 [Contempt Order] ... are abjectly unreasonable under the circumstances and clearly punitive." In Adams Creek II , defendants appealed, and this Court upheld, both the 2004 Summary Judgment Order, 227 N.C. App. at 467, 746 S.E.2d at 8, and the 2011 Contempt Order, id. at 472, 746 S.E.2d at 11. Thus, the reasonableness of those orders, or whether the 2011 Contempt Order imposed a civil contempt sanction, is the law of the case and is unreviewable. See Plasman , --- N.C. App. at ----, 800 S.E.2d at 775 (rejecting a similar collateral attack on an underlying order in the context of an appeal from a contempt order); see also Daniels v. Montgomery Mut. Ins. Co. , 320 N.C. 669, 676, 360 S.E.2d 772, 777 (1987) ("An erroneous order may be remedied by appeal; it may not be attacked collaterally." (citation omitted)).
Defendants further contend that the trial court's "ruling, [denying their motions] wherein no consideration was given the current financial nor health conditions of defendants, ... can only be characterized as punitive." We disagree.
"The paradigmatic coercive, civil contempt sanction, ... involves confining a contemnor indefinitely until he complies with an affirmative command[,]"
*14 Int'l Union, United Mine Workers of Am. v. Bagwell , 512 U.S. 821, 828, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994) (citations omitted), and incarceration for a fixed term similarly "is coercive when the contemnor is given the option of earlier release if he complies." Id. at 828, 114 S.Ct. at 2558 (citation omitted). This is because "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." Id. (citations and internal quotation marks omitted).
"[C]onclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from 'the subject intent of a State's laws and its courts,' but 'from an examination of the character of the relief itself[.]' " Id. at 828, 114 S.Ct. at 2557 (quoting Hicks v. Feiock , 485 U.S. 624, 636, 108 S.Ct. 1423, 1431-32, 99 L.Ed.2d 721 (1988) ); see *402 also Bishop v. Bishop , 90 N.C. App. 499, 505, 369 S.E.2d 106, 109 (1988) (adopting the Hicks Court's bright-line rule test: "[W]hile it is true that underlying 'punitive' as opposed to 'remedial and coercive' purposes distinguish criminal from civil contempt orders, those respective purposes should be drawn from an examination of the character of the actual relief ordered by the court."). "If the relief is imprisonment, it is coercive and thus civil if the contemnor may avoid or terminate his imprisonment by performing some act required by the court (such as agreeing to comply with the original order)." Bishop , 90 N.C. App. at 505, 369 S.E.2d at 109 (citing Hicks , 485 U.S. at 632, 108 S.Ct. at 1429 ).
Here, because the relief is imprisonment, and defendants may be released by performing affirmative acts required by the court, it is coercive and thus civil. The trial court's unchallenged findings addressing these matters support its conclusion that "[c]ontinuation of defendants' incarceration under the Contempt Order is not punitive." We overrule defendants' challenge to this issue.
III. Conclusion
Defendants have raised no meritorious argument with respect to any finding or conclusion in the trial court's order. Defendants were entitled to move the trial court "to determine if [they were] subject to release[,]" N.C. Gen. Stat. § 5A-22(b), but failed to produce sufficient evidence to support their alleged inability-to-comply defense. The court did not err by refusing to make findings on defendants' alleged inability to comply in light of their outright refusals to comply, even if they could. The trial court's unchallenged findings support its conclusion that defendants' continued incarceration is not punitive. Since defendants failed to demonstrate they were subject to release, the trial court properly denied their motions. We affirm.
AFFIRMED.
Judge TYSON concurs.
Judge STROUD dissents by separate opinion.