IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-1080

 Filed: 16 January 2018

Carteret County, No. 02 CVS 1270

ADAMS CREEK ASSOCIATES, Plaintiff,

 v.

MELVIN DAVIS & LICURTIS REELS, Defendants.

 Appeal by defendants from order entered 13 June 2016 by Judge Benjamin G.

Alford in Carteret County Superior Court. Heard in the Court of Appeals 6

September 2017.

 The Armstrong Law Firm, P.A., by L. Lamar Armstrong, Jr. and L. Lamar
 Armstrong, III, for plaintiff-appellee.

 Hairston Lane, P.A., by James E. Hairston, Jr., for defendant-appellants.

 ELMORE, Judge.

 Brothers, Melvis Davis and Licurtis Reels (defendants), appeal from an order

denying their motions for release from conditional incarceration for civil contempt.

Defendants have been previously before this Court twice, unsuccessfully disputing

an adjudication that Adams Creek Associates (plaintiff), not defendants, are the

rightful owners of 13.25 acres of property along Adams Creek in Carteret County,

and have unsuccessfully challenged two orders entered in 2006 and 2011 finding

them in contempt of court. See Adams Creek Assocs. v. Davis, 186 N.C. App. 512, 652
 ADAMS CREEK V. DAVIS

 Opinion of the Court

S.E.2d 677 (2007), writ denied, disc. rev. denied, temp. stay dissolved, appeal

dismissed, 362 N.C. 354, 662 S.E.2d 900 (2008) (“Adams Creek I”); Adams Creek

Assocs. v. Davis, 227 N.C. App. 457, 459, 746 S.E.2d 1, 3, disc. rev. denied, 367 N.C.

234, 748 S.E.2d 322 (2013) (“Adams Creek II”). Defendants have been imprisoned for

civil contempt since March 2011, after entry of the second contempt order, for failing

to comply with court orders requiring them to remove their structures and equipment

from Adams Creek Associates’ property, and to cease trespassing upon it. In its 2011

contempt order, the superior court afforded defendants the opportunity to purge their

contempt by (1) removing their structures and equipment from the property, and (2)

attesting in writing to never again trespass. In this appeal, defendants challenge a

2016 order denying their motions for custodial release.

 In 2016, defendants moved for custodial release on the grounds that they were

financially unable to comply with the contempt order and that their continued

incarceration has become punitive and violates due process. But at the hearing on

their motions, defendants testified that even if they were financially able to comply

with the property-removal purge condition, they would not do so, and defendants

again refused to comply with the attestation purge condition. Defendants’ counsel

also argued that because defendants were unable to comply with the order, their

continued imprisonment has become a punitive contempt sanction. The trial court

denied the motions. In its order, the trial court acknowledged that defendants

 -2-
 ADAMS CREEK V. DAVIS

 Opinion of the Court

presented evidence regarding their financial situation and the costs associated with

removing the structures and equipment from the property, but refused to make

findings on the matter in light of defendants’ refusals to comply with either purge

condition. The trial court also concluded that continued incarceration has not become

punitive because defendants wield the power to purge their contempt but have

recalcitrantly refused.

 On appeal, defendants contend the trial court erred by (1) failing to consider

their alleged inability to comply with the contempt order, (2) failing to consider

whether the purpose of the underlying order could still be served by defendants’

continued incarceration, and (3) improperly concluding that their continued

incarceration has not become a punitive criminal contempt. Because defendants were

already ordered to be indefinitely committed until they purged their civil contempt

when they filed their motions for release, the only issue properly before the trial court

was whether defendants were subject to custodial release. Because defendants

willfully refused to perform the attestation and admitted they would not perform the

property-removal purge condition, even if they could, defendants failed to prove they

purged their contempt or satisfy their burden of producing evidence to support their

alleged inability-to-comply defense. We hold the trial court did not err in refusing to

make futile findings on their alleged inability to comply with the prior order due to

defendants’ outright refusals to purge their contempt. Additionally, because the

 -3-
 ADAMS CREEK V. DAVIS

 Opinion of the Court

character of relief ordered by the contempt order was incarceration until compliance,

and defendants were afforded the opportunity to avoid imprisonment by performing

affirmative acts, we hold that the trial court properly concluded their continued

incarceration has not become punitive. Accordingly, we affirm.

 I. Background

 The litigation relevant to this appeal started in 1982, when Shedrick Reels

filed a trespass action against defendant Melvin Davis and Gertrude Reels, the

mother of defendant Licurtis Reels. See Adams Creek I, 186 N.C. App. at 516, 652

S.E.2d at 680. In 1984, the trial court entered a summary judgment order

adjudicating Shedrick to be the owner of the property and ordering Davis and Reels’

mother not to trespass. See Adams Creek II, 227 N.C. App. at 459, 746 S.E.2d at 3.

In 1985, Davis was held in contempt and incarcerated for his refusal to comply with

that order, but he was released upon satisfying the purge condition of executing a

document acknowledging the property belonged to Shedrick and agreeing not to

trespass. Id. In 1985, Shedrick sold the property to Adams Creek Development,

which then conveyed the property to plaintiff, Adams Creek Associates, in 1986. Id.

at 459–60, 746 S.E.2d at 3.

 In 2002, plaintiff filed an action against defendants Davis and Reels, alleging

they continued to claim an interest in the property and to trespass upon it. Id. at

460, 746 S.E.2d at 3–4. In 2004, the trial court entered a partial summary judgment

 -4-
 ADAMS CREEK V. DAVIS

 Opinion of the Court

order in plaintiff’s favor, enjoining defendants from further trespassing and ordering

them to remove their structures and equipment from the property (“2004 Summary

Judgment Order”). Id. After defendants refused to comply, plaintiff moved to hold

them in contempt. Id. After a show cause hearing, the trial court entered an order

on 10 August 2006 finding defendants in civil contempt for failing to comply with the

2004 Summary Judgment Order, and in criminal contempt for testifying under oath

that they did not intend to obey future orders to stay off the property (“2006 Contempt

Order”). Adams Creek I, 512 N.C. App. at 520, 652 S.E.2d at 683.

 In 2006, defendants appealed the 2006 Contempt Order. Id. Defendants

argued they were improperly found to be in both civil and criminal contempt for the

same behavior. Id. at 526–27, 652 S.E.2d at 686–87. We disagreed and held that the

trial court properly found defendants to be in both civil and criminal contempt for

different acts. Id. at 527, 652 S.E.2d at 687 (“[D]efendants were found in civil

contempt for failing to comply with the court’s 2004 order, and were found in criminal

contempt for their testimony threatening to disobey future orders of the court.”).

Defendants also attempted to challenge the 2004 Summary Judgment Order, but

because their appeal from that order was not properly before us, we refused to address

their challenges. Id. at 523, 652 S.E.2d at 684.

 In January 2011, plaintiff filed another motion to hold defendants in contempt

for continuing to occupy the property and refusing to comply with court orders

 -5-
 ADAMS CREEK V. DAVIS

 Opinion of the Court

directing them not to trespass. Adams Creek II, 227 N.C. App. at 461, 746 S.E.2d at

4. After a hearing, the trial court entered an order on 31 March 2011 finding

defendants in civil contempt for failing to comply with prior court orders, and

ordering that defendants be incarcerated until they purged their contempt, see id., by

(1) presenting evidence they removed their structures and equipment from the

property, and (2) attesting in writing to never again trespass (“2011 Contempt

Order”). Defendants have remained incarcerated since March 2011.

 In 2012, defendants appealed, among other orders, the 2011 Contempt Order

and the 2004 Summary Judgment Order. See Adams Creek II, 227 N.C. App. at 462,

746 S.E.2d at 5. On appeal, defendants raised several challenges to the 2004

Summary Judgment Order that awarded plaintiff title to the property, and we

affirmed that order. Id. at 462–67, 746 S.E.2d at 5–8. Defendants also challenged

the 2011 Contempt Order on the basis that “it relied on the erroneous conclusion that

Adams Creek is the rightful owner of the Waterfront Property.” Id. at 470, 746 S.E.2d

at 10 (footnote omitted). We ascertained that the actual issue presented was whether

defendants were improperly found in civil contempt in 2011 for failing to comply with

the 2004 Summary Judgment Order, id. at 470, 746 S.E.2d at 10, and concluded that

“[b]ased on the evidence presented, the trial court properly found that defendants

were able to comply with the 2004 Summary Judgment Order” and “[h]ence,

defendants’ noncompliance was willful.” Id. at 471, 746 S.E.2d at 11. Accordingly,

 -6-
 ADAMS CREEK V. DAVIS

 Opinion of the Court

having affirmed the 2004 Summary Judgment Order and having determined that

defendants remained in noncompliance with that order, we affirmed the 2011

Contempt Order. Id.

 On 1 June 2015, after having been incarcerated for four and a half years,

defendants petitioned our Supreme Court for a writ of habeas corpus for their

custodial release, which was denied three days later on 4 June 2015. See Davis v.

Buck, ___ N.C. ___, 772 S.E.2d 707 (2015).

 On 4 May 2016, defendants filed the instant motions in the cause, seeking

custodial release based upon their alleged inability to comply with the 2011 Contempt

Order, and on the basis that their continued incarceration has become punitive and

violates their due process rights. After a hearing at which defendants again refused

to perform the attestation purge condition and admitted they would refuse to comply

with the property-removal purge condition even if they were able, the trial court

entered an order on 13 June 2016 denying their motions. Defendants now appeal

from this 2016 order and have been in prison since entry of the 2011 Contempt Order.

 II. Analysis

 On appeal, defendants contend the trial court erred in denying their motions

for custodial release by (1) failing to consider their alleged inability to comply with

the 2011 Contempt Order, (2) failing to consider whether the purpose of the 2004

 -7-
 ADAMS CREEK V. DAVIS

 Opinion of the Court

Summary Judgment Order could still be served by compliance, and (3) improperly

concluding that their continued incarceration has not become punitive.

A. Review Standard

 “The standard of review for contempt proceedings is limited to determining

whether there is competent evidence to support the findings of fact and whether the

findings support the conclusions of law.” Gandhi v. Gandhi, ___ N.C. App. ___, ___,

779 S.E.2d 185, 188 (2015) (citation and quotation marks omitted). “Findings of fact

made by the judge in contempt proceedings are conclusive on appeal when supported

by any competent evidence and are reviewable only for the purpose of passing upon

their sufficiency to warrant the judgment.” Id. (citations and quotation marks

omitted). Legal conclusions are reviewed de novo. Tucker v. Tucker, 197 N.C. App.

592, 594, 679 S.E.2d 141, 143 (2009) (citation omitted).

B. Alleged Statutory Errors

 Defendants first contend the trial court erred by denying their motions for

release on the ground that it failed adequately to consider their alleged inability to

comply with the 2011 Contempt Order and, additionally, by failing to consider

whether the purpose of the underlying order may still be served by compliance.

Defendants’ arguments miss the mark.

 N.C. Gen. Stat. § 5A-21(a) (2015) provides in pertinent part:

 (a) Failure to comply with an order of a court is a
 continuing civil contempt as long as:

 -8-
 ADAMS CREEK V. DAVIS

 Opinion of the Court

 (1) The order remains in force;

 (2) The purpose of the order may still be served by
 compliance with the order;

 (2a) The noncompliance by the person to whom the
 order is directed is willful; and

 (3) The person to whom the order is directed is able
 to comply with the order or is able to take reasonable
 measures that would enable the person to comply
 with the order.

(Emphasis added.) “A person who is found in civil contempt may be imprisoned as

long as the civil contempt continues, subject to . . . limitations” inapplicable here.

N.C. Gen. Stat. § 5A-21(b) (2015) (emphasis added).

 “The purpose of civil contempt is not to punish but to coerce the defendant to

comply with a court order.” Spears v. Spears, ___ N.C. App. ___, ___, 784 S.E.2d 485,

494–95 (2016) (citation and quotation marks omitted). Thus, generally, before a trial

court may impose punishment for civil contempt, it must determine that a defendant

“ha[s] the present ability to comply, or the present ability to take reasonable measure

that would enable him [or her] to comply, with the order.” Id. at ___, 784 S.E.2d at

494 (citation and quotation marks omitted). However, “if a person is found in civil

contempt for failure . . . to comply with a court order to perform an act that does not

require the payment of a monetary judgment, the person may be imprisoned as long

 -9-
 ADAMS CREEK V. DAVIS

 Opinion of the Court

as the civil contempt continues without further hearing.” N.C. Gen. Stat. § 5A-21(b)

(emphasis added).

 In the 2011 Contempt Order, defendants were ordered to be confined

indefinitely until they purged their contempt by (1) “presenting evidence . . . that

[certain structures they own have] been removed completely from the property,” and

(2) “confirm[ing] in writing [their] agreement to never again go onto the property.”

Because these acts do not require defendants to pay a monetary judgment, they may

be subject to remain in prison “without further hearing.” N.C. Gen. Stat. § 5A-21(b).

Since defendants were already serving an indefinite, conditional prison sentence for

civil contempt at the time their motions for release were filed, the trial court was not

adjudicating an initial or continuing contempt, and thus had no inherent statutory

obligation to consider any of N.C. Gen. Stat. § 5A-21(a)’s enumerations; rather, the

issue for the trial court, which is the subject of our review, is whether defendants

satisfied their burden of showing they were subject to release.

 N.C. Gen. Stat. § 5A-22(a) (2015) provides that “[a] person imprisoned for civil

contempt must be released when his civil contempt no longer continues.” Upon an

incarcerated contemnor’s motion, “the court must determine if he is subject to release

and, on an affirmative determination, order his release.” N.C. Gen. Stat. § 5A-22(b)

(2015). Absent a showing that a contemnor purged their contempt, he or she may

move for release based upon “a present inability to comply with the order . . . .” United

 - 10 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

States v. Rylander, 460 U.S. 752, 757, 103 S. Ct. 1548, 1552, 75 L. Ed. 2d 521 (1983)

(citations omitted); Turner v. Rogers, 564 U.S. 431, 442, 131 S. Ct. 2507, 2516, 180 L.

Ed. 2d 452 (2011) (“A court may not impose punishment in a civil contempt

proceeding when it is clearly established that the alleged contemnor is unable to

comply with the terms of the order.” (citation and internal quotation marks omitted)).

But “[i]t is settled, . . . that in raising this defense, the [contemnor] has a burden of

production.” Rylander, 460 U.S. at 757, 103 S. Ct. at 1552 (citations omitted). It

follows that a contemnor cannot satisfy this burden by testifying that, even if they

could comply with the order, they would not. Such a showing would vitiate the

inability-to-comply defense.

 Here, defendants alleged in their motions that they were financially unable to

comply with the 2011 Contempt Order. However, at the hearing, defendants readily

admitted that they would not perform the property-removal purge condition, even if

they could. This relevant exchange occurred between defendant Davis and opposing

counsel:

 Q. Regardless of how many orders exist or what judges tell
 you to do, you will never get off that land or move what you
 have on the land, will you?

 A. No, sir.

 Q. It’s not that you can’t do it, it’s that you won’t do it, right?

 ....

 - 11 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

 A. I-- we have been on that land all our days and that is
 where-- that is where I am at.

 ....

 Q. So you simply refuse to do it? Whether you can do it or
 not it doesn’t matter to you, you just won’t do it?

 A. They come there, they blew up the boat, sunk my boat,
 come and set my house on fire.

 THE COURT: Sir, you need to answer his question, not just
 start talking about things you want to talk about. The
 question is, it’s not a matter of whether you can’t but
 whether you will. That is his question.

 A. I will not.

 ....

 Q. You will not do it?

 A. No.

(Emphasis added.) This relevant exchange occurred between defendant Reels and

opposing counsel:

 Q. So whether or not you have equipment, whether or not
 you have somebody that can use it, whether or not your
 mother will let you move it on her land, all of that doesn’t
 matter because you simply are not going to move it ever, are
 you?

 A. No, sir, I don’t-- I don’t have the financial to move it
 because it’s mine.

 Q. What if you had the money? What if you had social
 security disability, would you use that money to move it?

 - 12 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

 ....

 A. No, sir.

 ....

 Q. Why not?

 A. Because it’s mine.

 Q. So this idea that you don’t have money to move it, if you
 had money you still wouldn’t use it to move it, would you?

 A. No, sir.

(Emphasis added.)

 In its order denying defendants’ motions, the trial court made the following

unchallenged, and thus binding, factual findings:

 16. Defendants’ counsel called both defendants to the stand
 to testify about their lack of income since they have been in
 jail, the heavy equipment and its condition, and their
 health but asked no questions about the defendants’
 willingness to “never again go upon the property.”

 17. On cross examination, both defendants confirmed they
 had testified under oath at least five times in the past
 decades of litigation (in court and in deposition).

 18. Both defendants confirmed that in their prior
 testimony they said on every occasion that it was not they
 couldn’t comply with the Contempt Order, it was they
 wouldn’t comply.

 19. Both defendants again confirmed that they would not
 stay off the property and interjected their continued
 commitment to their ownership of the property despite the
 decades of legal rulings to the contrary.

 - 13 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

 20. Both defendants testified that they did not care how
 many judges told them to stay off the property, they would
 not do so.

 21. Both defendants testified that if they had the money to
 remove structures as required by the Contempt Order, they
 would not do so.

 22. Other evidence was presented on other factual issues
 concerning the defendants’ financial condition, the heavy
 equipment still owned by Melvin Davis and its condition,
 the expense of moving the structures off of the property,
 the defendants’ health, and other issues.

 23. The Court makes no finding as to these matters
 because defendants’ failure to sign the necessary written
 document pledging to not again go upon the property, and
 their avowed insistence to the contrary they would indeed
 go back on the property, is dipositive on the controlling
 issue as to whether defendants have purged or are even
 willing to purge their contempt.

 As reflected by the trial transcript and these findings, the trial court considered

defendant’s alleged inability defense but determined that making correlative findings

would be futile in light of their outright refusals to purge their contempt. Since the

purge condition acts did not require defendants to pay a monetary judgment,

defendants may be imprisoned “without further hearing.” And because the hearing

was not an initial or continuing adjudication of contempt, the trial court had no

obligation under N.C. Gen. Stat. § 5A-21(a) to make findings regarding defendants’

ability to comply with the contempt order. Expenses inherent in removing structures

and equipment is certainly relevant in determining whether defendants here can

 - 14 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

comply with the property-removal purge condition. But based on their refusals to

perform the attestation purge act, and their admissions that they would refuse to

perform the property-removal purge act even if they were able, defendants effectively

vitiated their inability defense. Under these circumstances, we hold the trial court

did not err in refusing to make findings on defendants’ alleged inability to comply

with the contempt order.

 Defendants also make a bare assertion that the trial court erred by failing to

find that “the purpose of the order, or prior orders . . . , are served by the Defendants’

continued incarceration.” As concluded above, the hearing before the trial court was

not an initial or continuing contempt adjudication, and therefore the trial court was

under no statutory obligation to reconsider N.C. Gen. Stat. § 5A-21(a)(2) (“The

purpose of the order may still be served by compliance with the order[.]”). Further,

defendants argument misses the point. The relevant consideration is not whether

the purpose of an order can be served by continuing to punish a contemnor, but

whether its purpose can still be served by compliance. The record reveals that

defendants have not removed their structures from plaintiff’s property and thus the

purpose of the 2004 Summary Judgment Order could still be served by compliance.

See, e.g., Plasman v. Decca Furniture (USA), Inc., ___ N.C. App. ___, ___, 800 S.E.2d

761, 773 (2017) (“Our review of the record reveals that the [contemnors] have yet to

return the diverted funds. We need say little more than that the purpose of the

 - 15 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

[underlying order]—to enforce compliance with the injunction’s terms, including the

requirement that funds diverted from Bolier’s bank accounts be returned to Decca

USA—could still be served by compliance with the [underlying order]”).

C. Nature of Contempt

 Defendants next contend the court erred by denying their motions for release

on the ground that it erroneously concluded that their continued incarceration is not

punitive. We disagree.

 As an initial matter, we reject defendant’s argument that the “2004 [Summary

Judgment] Order, and subsequently, [the] 2011 [Contempt Order] . . . are abjectly

unreasonable under the circumstances and clearly punitive.” In Adams Creek II,

defendants appealed, and this Court upheld, both the 2004 Summary Judgment

Order, 227 N.C. App. at 467, 746 S.E.2d at 8, and the 2011 Contempt Order, id. at

472, 746 S.E.2d at 11. Thus, the reasonableness of those orders, or whether the 2011

Contempt Order imposed a civil contempt sanction, is the law of the case and is

unreviewable. See Plasman, ___ N.C. App. at ___, S.E.2d at 775 (rejecting a similar

collateral attack on an underlying order in the context of an appeal from a contempt

order); see also Daniels v. Montgomery Mut. Ins. Co., 320 N.C. 669, 676, 360 S.E.2d

772, 777 (1987) (“An erroneous order may be remedied by appeal; it may not be

attacked collaterally.” (citation omitted)).

 Defendants further contend that the trial court’s “ruling, [denying their

 - 16 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

motions] wherein no consideration was given the current financial nor health

conditions of defendants, . . . can only be characterized as punitive.” We disagree.

 “The paradigmatic coercive, civil contempt sanction, . . . involves confining a

contemnor indefinitely until he complies with an affirmative command[,]” Int’l Union,

United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828, 114 S. Ct. 2552, 2557, 129

L. Ed. 2d 642 (1994) (citations omitted), and incarceration for a fixed term similarly

“is coercive when the contemnor is given the option of earlier release if he complies.”

Id. at 828, 114 S. Ct. at 2558 (citation omitted). This is because “the contemnor is

able to purge the contempt and obtain his release by committing an affirmative act,

and thus carries the keys of his prison in his own pocket.” Id. (citations and internal

quotation marks omitted).

 “[C]onclusions about the civil or criminal nature of a contempt sanction are

properly drawn, not from ‘the subject intent of a State’s laws and its courts,’ but ‘from

an examination of the character of the relief itself[.]” Id. at 828, 114 S. Ct. at 2557

(quoting Hicks v. Feoick, 485 U.S. 624, 636, 108 S. Ct. 1423, 1431–32, 99 L. Ed. 2d.

721 (1988)); see also Bishop v. Bishop, 90 N.C. App. 499, 505, 369 S.E.2d 106, 109

(1988) (adopting the Hicks Court’s bright-line rule test: “[W]hile it is true that

underlying ‘punitive’ as opposed to ‘remedial and coercive’ purposes distinguish

criminal from civil contempt orders, those respective purposes should be drawn from

an examination of the character of the actual relief ordered by the court.”). “If the

 - 17 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

relief is imprisonment, it is coercive and thus civil if the contemnor may avoid or

terminate his imprisonment by performing some act required by the court (such as

agreeing to comply with the original order).” Bishop, 90 N.C. App. at 505, 369 S.E.2d

at 109 (citing Hicks, 485 U.S. at 632, 108 S. Ct. at 1429).

 Here, because the relief is imprisonment, and defendants may be released by

performing affirmative acts required by the court, it is coercive and thus civil. The

trial court’s unchallenged findings addressing these matters support its conclusion

that “[c]ontinuation of defendants’ incarceration under the Contempt Order is not

punitive.” We overrule defendants’ challenge to this issue.

 III. Conclusion

 Defendants have raised no meritorious argument with respect to any finding

or conclusion in the trial court’s order. Defendants were entitled to move the trial

court “to determine if [they were] subject to release[,]” N.C. Gen. Stat. § 5A-22(b), but

failed to produce sufficient evidence to support their alleged inability-to-comply

defense. The court did not err by refusing to make findings on defendants’ alleged

inability to comply in light of their outright refusals to comply, even if they could.

The trial court’s unchallenged findings support its conclusion that defendants’

continued incarceration is not punitive. Since defendants failed to demonstrate they

were subject to release, the trial court properly denied their motions. We affirm.

 AFFIRMED.

 - 18 -
 ADAMS CREEK V. DAVIS

 Opinion of the Court

Judge TYSON concurs.

Judge STROUD dissents by separate opinion.

 -2-
 No. 16-1080 – Adams Creek v. Davis

 STROUD, Judge, dissenting.

 Because I believe that the trial court and the majority opinion have conflated

two separate requirements of N.C. Gen. Stat. §§ 5A-22 (2015) and 5A-21(a) (2015), I

dissent. Willfulness and ability are two different things, and the trial court erred by

not considering ability.

 The majority has set out the long procedural history of this case well and I will

not repeat it.

 Defendants sought release under N.C. Gen. Stat. § 5A-22(a), which provides:

 (a) A person imprisoned for civil contempt must be released
 when his civil contempt no longer continues. The order of
 the court holding a person in civil contempt must specify
 how the person may purge himself of the contempt. Upon
 finding compliance with the specifications, the sheriff or
 other officer having custody may release the person
 without a further order from the court.

(Emphasis added).

 Defendants have previously been held in civil contempt, but the question under

N.C. Gen. Stat. § 5A-22 requires the trial court to consider whether a contemnor could

still be held in civil contempt as of the time of his motion for release, since he must

be released “when his civil contempt no longer continues.” N.C. Gen. Stat. § 5A-22(a).

We must then refer to N.C. Gen. Stat. § 5A-21(a) for the definition of “civil contempt”

and to determine if the civil contempt continues:

 (a) Failure to comply with an order of a court is a
 continuing civil contempt as long as:
 ADAMS CREEK V. DAVIS

 STROUD, J., dissent

 (1) The order remains in force;
 (2) The purpose of the order may still be served by
 compliance with the order;
 (2a) The noncompliance by the person to whom the
 order is directed is willful; and
 (3) The person to whom the order is directed is able
 to comply with the order or is able to take reasonable
 measures that would enable the person to comply
 with the order.

(Emphasis added).

 Here, the order remains in force and the purpose of the order may still be

served by compliance. The defendants’ dispute addresses subsections (2a) and (3),

which are two separate and independent requirements, and the trial court must

address both. The trial court, and the majority opinion, conflate these two

subsections. Under N.C. Gen. Stat. § 5A-21(a), the trial court must find both that

“[t]he noncompliance by the person to whom the order is directed is willful;” and “[t]he

person to whom the order is directed is able to comply with the order or is able to take

reasonable measures that would enable the person to comply with the order.” N.C.

Gen. Stat. § 5A-21(a)(2a),(3).

 Defendants’ noncompliance is willful under N.C. Gen. Stat. § 5A-21(a)(2a).

They stubbornly refuse to recognize that the land is not theirs, and they refuse to

perform the one part of the order they have the ability to perform: signing a piece of

paper with their promise not to go on the land. But to be in continuing civil contempt,

defendants must also be “able to comply with the order” or “able to take reasonable

 2
 ADAMS CREEK V. DAVIS

 STROUD, J., dissent

measures that would enable” them to comply with the order. N.C. Gen. Stat. § 5A-

21(a)(3). Logically, they must be able to comply with all of the provisions of the order,

or they cannot comply with the order. Being able to comply with a part of the order -

- signing a promise not to go on the land -- is not the same as ability to comply with

the entire order. Nor would the primary purpose of the order be served by this

symbolic act, since the primary purpose of the order is to make the defendants remove

the structures on the land.

 But the trial court erred by failing even to consider defendants’ evidence of

their inability to comply with the order. The trial court specifically found it would

not make findings regarding defendants’ inability to comply only because defendants

stated their intent not to comply:

 22. Other evidence was presented on other
 factual issues concerning the defendants’ financial
 condition, the heavy equipment still owned by Melvin
 Davis and its condition, the expense of moving the
 structures off of the property, the defendants’ health, and
 other issues.

 23. The Court makes no findings as to these
 matters because defendants’ failure to sign the necessary
 written document pledging to not again go upon the
 property, and their avowed insistence to the contrary that
 they would indeed go back on the property, is dispositive
 on the controlling issue as to whether defendants have
 purged or are even willing to purge their contempt.

(Emphasis added).

 3
 ADAMS CREEK V. DAVIS

 STROUD, J., dissent

 The fact that defendants are obstinate and foolish does not absolve the trial

court of its responsibility to consider that defendants may be obstinate, foolish, and

unable to comply with the order. I will not recite defendants’ evidence in detail, but

it shows generally that although defendants once had the ability to demolish the

structures on the property themselves, since they had the equipment to do this work,

their ability to do the work themselves is gone. The equipment has been sitting idle

since they were imprisoned in 2011 and the equipment was at one point submerged

under water during a storm. Defendants also presented evidence that the demolition

of the structures would cost approximately $46,000.00. Plaintiff does not dispute this

cost. Defendant Davis presented evidence that his only income is from social security.

He had about $100.00 in a bank account in 2011; he has no other savings or

retirement accounts. He was 69 years old at the time of the hearing and had suffered

a back injury while in jail when he fell down the stairs. Defendant Reels presented

evidence he has no income, no bank account, no retirement account, and has had no

income since 2011. He was 59 years old at the time of the hearing and had been

diagnosed with diabetes. He has no medical insurance and has received medical

treatment in jail. Their financial situation has not improved with incarceration since

2011. There is absolutely no reason to believe that their ability to do the demolition

themselves will improve with time or that their financial circumstances will improve

with continued incarceration.

 4
 ADAMS CREEK V. DAVIS

 STROUD, J., dissent

 In most contempt cases, the contemnor claims he is willing to perform, but

unable; in such case, the trial court “must first make a finding of a defendant’s

present ability to comply with an order before concluding that a defendant is in civil

contempt of an order.” Oakley v. Oakley, 165 N.C. App. 859, 864, 599 S.E.2d 925, 929

(2004). At other times, the contemnor refuses to perform, but he is clearly able to

perform. See, e.g., Farr v. Pitchess, 409 U.S. 1243, 1243, 34 L. Ed. 2d 655, 657, 93 S.

Ct. 593, 593 (1973) (reporter who refused to disclose the names of his sources was

found to be in civil contempt). The scenario before us in this case is a rare situation

in which the contemnors maintain their unwillingness to perform, and they are in

fact unable to perform, even if they wanted to. Perhaps this reference is obscure, but

the defendants are essentially in the position of the Black Knight in the movie “Monty

Python and the Holy Grail.”1 The Black Knight insists that “None shall pass” through

the path in the forest which he guards; the defendants insist the same as to the land

they claim. King Arthur -- who had the legal authority as king to order the Black

Knight to let him pass -- seeks to pass through the forest, but the Black Knight

refuses to comply with his order. King Arthur and the Black Knight then engage in

a sword fight. Even after King Arthur has cut off both of the Black Knight’s arms

and legs, he still insists that he will continue to fight and that no one may pass --

 1 Monty Python and the Holy Grail (Michael White Prods. 1975).

 5
 ADAMS CREEK V. DAVIS

 STROUD, J., dissent

although he cannot do anything. King Arthur simply says, “We’ll call it a draw,” and

continues on his way, leaving the Black Knight with no one to listen to his protests.

 Here, the trial court and the plaintiff should follow King Arthur’s wise lead

and leave defendants behind. If defendants do not have the ability to perform, or to

take reasonable measures to perform, and there is no reason to believe that they ever

will have the ability to perform, they should not remain incarcerated forever for

“continuing civil contempt” under N.C. Gen. Stat. §§ 5A-21(a) and 5A-22. The United

States Supreme Court has noted that if compliance is factually impossible, there is

no reason for civil contempt:

 While the court is bound by the enforcement order, it will
 not be blind to evidence that compliance is now factually
 impossible. Where compliance is impossible, neither the
 moving party nor the court has any reason to proceed with
 the civil contempt action. It is settled, however, that in
 raising this defense, the defendant has a burden of
 production.

U.S. v. Rylander, 460 U.S. 752, 757, 75 L.Ed.2d 521, 528, 103 S. Ct. 1548, 1552 (1983)

(citations omitted).

 Defendants met their burden of producing evidence of their inability to perform

and their inability to take reasonable measures to perform; their evidence was

uncontroverted. The trial court simply refused to make findings of fact based upon

their evidence. Based upon the standard used by the trial court and the majority

opinion, assuming defendants continue to state their refusal to give up their land, no

 6
 ADAMS CREEK V. DAVIS

 STROUD, J., dissent

matter what evidence they produce of their abject poverty and inability to perform,

they will remain imprisoned for the rest of their lives. But the trial court is required

by N.C. Gen. Stat. § 5A-21(a)(3) to make findings of fact regarding defendants’ actual

ability to comply or to take reasonable measure to comply, and the trial court failed

to make these findings. I would therefore reverse and remand to the trial court for it

to make findings of fact as to defendants’ actual ability to perform all of the purge

conditions of the 2011 Contempt Order, as well as any conclusions of law supported

by those findings of fact.

 This is a dissent, and the trial court may chose to ignore it completely. But

this case will no doubt be considered again by the trial court in the future. I would

encourage the trial court to consider some different method of dealing with this

situation, preferably one which will not continue to waste hundreds of thousands of

dollars in public funds and occupy space in the Carteret County jail.

 Besides the trial court’s error in failing to consider the evidence of defendants’

inability to comply with the order, I must note the futility of this case and the

tremendous cost it has imposed, and will continue to impose, on the taxpayers of

North Carolina -- and particularly Carteret County. Indeed, this is one reason why

a contemnor’s ability to comply is crucial to continuing incarceration indefinitely for

civil contempt; if the contemnor has no ability to comply, public funds and resources

are wasted seeking to accomplish an impossibility. And since the majority has

 7
 ADAMS CREEK V. DAVIS

 STROUD, J., dissent

approved the trial court’s refusal to consider defendants’ ability to comply, the costs

will only continue to increase indefinitely. According to defendant’s motion, the cost

of housing each inmate in the Carteret County Jail is about $60.00 per day, or

$21,900.00 per year, and any costs for defendants’ medical care are not included in

this amount. Both defendants suffer from conditions which require medical care.

Defendants have been taking up space in jail since 2011 -- space sorely needed for

actual criminals. Defendants’ costs will most likely continue to increase, due to their

ages and medical conditions. This simple property dispute has been transformed into

a state-funded enforcement action for the benefit of the plaintiff. Plaintiff has

incurred attorney fees for this matter for years, and I cannot fathom why plaintiff

does not simply bulldoze the structures remaining on the property and proceed with

whatever plans for development it may have. This would be far cheaper and more

productive that continuing to insist that two destitute and stubborn men do

something they are not capable of doing. Defendants will never have the ability or

inclination to do the demolition for Plaintiff. If defendants are released from jail and

enter the property -- and they probably will -- I have full confidence that Carteret

County’s law enforcement can handle the situation. Defendants may end up in jail

again after they are arrested for trespassing. But at least defendants’ inability to pay

for the removal of structures from the property will be irrelevant in their criminal

prosecution. And the penalty for trespassing is not life imprisonment.

 8
 ADAMS CREEK V. DAVIS

 STROUD, J., dissent

 I therefore respectfully dissent and would reverse and remand for the trial

court to make findings of fact and conclusions of law as dictated by N.C. Gen. Stat.

§ 5A-21.

 9